MARY T. PITTMAN AND T. P. THOMAS, JR. v. JAMES MILLER THOMAS, IN-
DIVIDUALLY AND AS EXECUTOR OF THE WILL OF CATHARINE MILLER THOMAS,
DECEASED, SARAH ANNE THOMAS (ROWLETT), DORIS ELIZABETH
THOMAS TAYLOR, MARY LUCILE PITTMAN, WALTER JAMES PITT-
MAN, JR., LUCILE WEST ABBITT BOND, CATHARINE LUCILE
THOMAS GOSSAM, AND CAROLE ANN THOMAS, A MINOR

No. 502A82

(Filed 28 January 1983)

**Wills § 28.4— holographic will—construction of provision concerning education of
grandchildren—view toward "circumstances attendant" to writing of will**

Where a testatrix stated in item VII of her holographic will that "I re-
quest that my executor see that Sarah Anne Thomas is given sufficient funds
to complete her education. . . . The same situation in the case of Dorris
Elizabeth Thomas Taylor is recognized by (the executor) and may be also pro-
vided for (the other grandchildren)," the trial court correctly found that Sarah
Anne Thomas and Dorris Elizabeth Thomas Taylor could be reimbursed for
educational expenses incurred beyond high school but that none of the other
grandchildren were entitled to the payment of any educational expenses. The
significant circumstances attendant to the writing of item VII of the will were
that the youngest sister of Sarah Anne and Dorris Elizabeth had been serious-

ly ill and the father of these girls had incurred large medical expenses as a result. Such circumstances clearly indicated a desire to assist in the education of her grandchildren if at the time of her death the need to do so existed because the parents of both grandchildren were unable to shoulder the expense. Therefore, the Court of Appeals erred in holding that the testatrix intended to establish a trust fund for her grandchildren for their education in an unnamed amount and for an unnamed period of time.

Justices MEYER and MARTIN did not participate in the consideration or decision of this case.

THIS matter comes to us on appeal as a matter of right, pursuant to G.S. 7A-30(2) (1981), from the decision of the Court of Appeals, 58 N.C. App. 336, 293 S.E. 2d 695 (1982), in which one judge dissented. In its decision the Court of Appeals vacated and remanded the judgment of *Fountain, Judge,* filed 28 August 1981 in Superior Court, WILSON County.

In this appeal we determine the validity and meaning of an ambiguous provision in a holographic will.

*Rose, Jones, Rand & Orcutt, P.A., by Z. Hardy Rose and William R. Rand, for plaintiffs.*

*Tharrington, Smith & Hargrove, by Wade M. Smith and Swann & Evans, P.A., by Steven L. Evans, for defendant James Miller Thomas.*

*George A. Weaver, guardian ad litem, for defendant Carole Ann Thomas.*

CARLTON, Justice.

I.

Catharine Miller Thomas, a resident of Wilson County, died 11 July 1979. She was seventy-eight years of age. Her son, James Miller Thomas, qualified as executor of her holographic will which was dated 1 October 1976. The taxable estate of Mrs. Thomas as finally computed for federal estate tax purposes exceeded $1,000,000.

Mrs. Thomas was survived by four children, eight grandchildren and one great-grandchild who were named beneficiaries

in her will. Each beneficiary's relationship to Mrs. Thomas and age at the time of trial is shown below:

*T. P. Thomas, Jr. (55)—Son*

Sarah Anne Thomas (Rowlett) (28)—Granddaughter
Catharine Lucile Thomas Gossom (25)—Granddaughter
Dorris Elizabeth Thomas Taylor (27)—Granddaughter
    Jennifer Taylor (8)—Great-granddaughter

*Mary Thomas Pittman (57)—Daughter*

Mary Lucile Pittman (27)—Granddaughter
Walter James Pittman, Jr. (23)—Grandson

*Catharine Margaret Thomas Abbitt (54)—Daughter*

Catharine Margaret Abbitt Teeter (31)—Granddaughter
Lucile West Abbitt Bond (29)—Granddaughter

*James Miller Thomas (47)—Son*

Carole Ann Thomas (17)—Granddaughter

In the undisputed portions of her will, Mrs. Thomas provided as follows for her children:

*T. P. Thomas, Jr.*

—$10,000 for the education or medical expenses of his daughter, Catharine Lucile Thomas Gossom

—a one-fourth interest in the "Miller Groves" and the "Miller Farm"

—a one-third interest in the residue of her estate including her partnership interests in the Southern Storage Company

*Mary Thomas Pittman*

—$10,000 to be used solely for the education expenses of her son, Walter James Pittman, Jr. Any of this money not used for this designated purpose to be given the grandson on his 25th birthday

—a one-fourth interest in the "Miller Groves" and the "Miller Farm"

—a one-third interest in the residue of her estate including her partnership interests in the Southern Storage Company

*Catharine Margaret Thomas Abbitt*

— the sum of $1,000

— a one-fourth interest in the "Miller Groves" and the "Miller Farm"

*James Miller Thomas*

— $10,000 to be used for the education of his daughter, Carole Ann Thomas. Any of this money not used for this purpose to be given the granddaughter on her 25th birthday.

— her home and lot on 1614 West Nash Street in Wilson, in fee simple

— a one-fourth interest in the "Miller Groves" and the "Miller Farm"

— a one-third interest in the residue of her estate including her partnership interests in the Southern Storage Company

— the discretion to distribute all of her personal property such as jewelry, furniture, silver, china, glass, etc. This son, her youngest, was also appointed executor of the estate.

In item VII, the paragraph of the will which gives rise to this lawsuit, Mrs. Thomas provided:

I request that my Executors see that Sarah Anne Thomas is given sufficient funds to complete her education. The amount to be used cannot be determined at this time but is a confirmed promise. The same situation in the case of Dorris Elizabeth Thomas Taylor is recognized by James Miller Thomas and may be also provided for Mary Lou Pittman, Walter James Pittman, Jr., Carole Ann Thomas, James Miller Thomas, Lucile West Abbitt Bond and Catharine Lucile Thomas.

On 8 July 1980, plaintiffs, Mary T. Pittman and T. P. Thomas, Jr., filed a complaint pursuant to the North Carolina Declaratory Judgment Act, G.S. 1-253 to 1-267 (1969), seeking construction of this paragraph of the will. They alleged, *inter alia*, that a dispute existed between them and James Miller Thomas, the executor of the will, concerning the purpose of this provision. They alleged that the executor had undertaken to administer the provision by

allotting $95,000 for the education of his own daughter, Carole Ann Thomas, but failed to make similar allotments for the education of the other beneficiaries named in the article. Plaintiffs asked the court to determine the validity of the provision in question or, in the alternative, to construe the provision's meaning and intent and issue proper instructions to the executor.

George A. Weaver, guardian ad litem for Carole Ann Thomas, filed an answer denying that the provision was too vague and uncertain to be administered. He asked that the court impress a trust on the assets of the estate to the extent necessary to carry out the provision or, in the alternative, that the court direct the executor to set aside a sufficient amount of money for Carole Ann Thomas to complete her education through medical school "in compliance with her present intention."

None of the other defendants, beneficiaries included in the provision at issue, filed a responsive pleading.

Of all the named beneficiaries, only two grandchildren, Sarah Anne Thomas (Rowlett) and Carole Ann Thomas, testified at trial. The evidence tended to show that of the eight people named in item VII of the will all are grandchildren of Mrs. Thomas except James Miller Thomas, her youngest son and executor. The first two people named in item VII, Sarah Anne Thomas (Rowlett) and Dorris Elizabeth Thomas Taylor, are two of the three children of the testatrix's oldest son, T. P. Thomas, Jr. Sarah Anne Thomas (Rowlett) testified that during 1974, 1975 and 1976 her father incurred substantial medical expenses due to the illness of her other sister, Catharine Lucile Thomas Gossom. She said her grandmother was aware of this illness and the great expenses her father incurred because of it. She also testified that her grandmother knew that her financial problems were among the reasons why she dropped out of school.

Sarah Anne also testified that she attended various colleges between 1970 and 1975 but never obtained a degree. She said her grandmother sent her about $4,000 to help pay for her education; in addition, Sarah Anne borrowed about $5,500 for her educational expenses. She dropped out of college, in part, because of the financial strain her father was suffering and because of the disruption in the family due to her sister's illness. Moreover, her

"career goals were not concrete," she said. She married in May of 1979 and now farms with her husband in Kentucky.

At the time of trial Carole Ann Thomas was enrolled as a freshman at the College of William and Mary. She testified that it was her desire to attend medical school at Duke University. The director of budget and finance at Duke University Medical Center testified that the cost of a four-year medical school education at Duke would be about $90,000, assuming the student enters medical school in 1985.

Carole Ann testified that her grandmother financed her private school education. She said she has always been an excellent student. Carole Ann is the only child of the testatrix's youngest son and executor, James Miller Thomas. Her name appears three times in the testatrix's will: in one article as the beneficiary of a $10,000 trust for her education, in another as the recipient of a $1,000 general bequest and, finally, as one of the persons named in the article which is the subject of this lawsuit. Carole Ann testified the testatrix encouraged her to pursue a medical career and that her grandmother asked her parents to compile projected figures for a medical school education.

Judge Fountain entered findings of fact including those noted above and concluded as a matter of law: (1) item VII of Mrs. Thomas' will is not void; (2) Sarah Anne Thomas (Rowlett) can recover the legitimate costs of her education not previously paid by Mrs. Thomas in the amount of $5,500; (3) Dorris Elizabeth Thomas Taylor is to be reimbursed for any legitimate educational expenses she incurred beyond high school; (4) none of the other persons named in item VII of the will are entitled to the payment of any educational expenses.

Defendants James Miller Thomas and Carole Ann Thomas appealed to the Court of Appeals.

A divided panel of the Court of Appeals vacated and remanded the trial court order. The majority agreed with Judge Fountain's conclusion that item VII of the will was not void; however, it believed that the language of item VII, construed in the context of the entire will and the conditions and circumstances existing at the time the will was written, manifested an intention on the part of Mrs. Thomas to create a testamentary trust. It further held that Mrs. Thomas did not intend to pay for all the educational ex-

penses of all her grandchildren but that the will established a trust fund to ensure that no beneficiary named in item VII be forced to abandon an educational goal for financial reasons. Hence, the majority believed that the trial court erred in ordering that: (1) Sarah Anne was to be reimbursed for the educational expenses she incurred before the death of the testatrix, and (2) none of the others named in item VII were entitled to the status of beneficiary of the trust.

Judge Vaughn dissented without rendering an opinion. He voted to affirm the judgment of the trial court. Plaintiffs, Mary T. Pittman and T. P. Thomas, Jr., appeal to this Court as a matter of right.

## II.

This Court is once again called upon to interpret the ambiguous provisions of a holographic will. Our decisions have long recognized the inherent difficulty of the task. Because the problem in each case is "to ascertain the intent of the particular testator and the circumstances surrounding each testator vary, decisions reached in other cases, whether by this Court or by courts of other jurisdictions, are informative but not controlling." *Wilson v. First Presbyterian Church,* 284 N.C. 284, 295, 200 S.E. 2d 769, 776 (1973). Justice Higgins, writing for this Court in *Morris v. Morris,* 246 N.C. 314, 98 S.E. 2d 298 (1957) stated:

The courts approach with apprehension and misgivings the task of construing wills—of saying what one now deceased meant by the words he used during his lifetime in the disposition of his property to take effect at his death. Holographic wills especially are like the men who make them—individual. Two wills of exactly the same wording may be differently construed by reason of the different circumstances surrounding the testator at the time he made the will—differences in the number and ages of relatives, the amount and character of his property, his legal and moral obligations, and, above all, the purpose he sought to accomplish. At best, therefore, the courts can make use of previously decided cases only as meager aid in the ascertainment of the testator's intent.

*Id.* at 315-16, 98 S.E. 2d at 300.

Although previous decisions provide little help in interpreting the provision of the will at issue here, we rely on those decisions, of course, to remind us of the applicable principles of law which are well established in this jurisdiction:

If the terms of a will are set forth in clear, unequivocal and unambiguous language, judicial construction is unnecessary. *Rhoads v. Hughes*, 239 N.C. 534, 535, 80 S.E. 2d 259 (1954). When doubt exists as to what the testator intended, resort may be had to the courts for construction of the will. *Id.* Indeed, the authority and responsibility to interpret or construe a will rests solely on the courts. *Wachovia Bank and Trust Co. v. Wolfe*, 243 N.C. 469, 473, 91 S.E. 2d 246, 250 (1956).

Here, the terms of item VII of Mrs. Thomas' will unquestionably are not clear, unequivocal or unambiguous and, thus, judicial construction has been properly invoked.

It is an elementary rule in this jurisdiction "that the intention of the testator is the polar star which is to guide in the interpretation of all wills, and, when ascertained, effect will be given to it unless it violates some rule of law, or is contrary to public policy." *Clark v. Connor*, 253 N.C. 515, 520-21, 117 S.E. 2d 465, 468 (1960). In attempting to determine the testator's intention, "the language used, and the sense in which it is used by the testator, is the primary source of information, as it is the expressed intention of the testator which is sought." *Id.* Isolated clauses or sentences should not be considered out of context; the "will is to be considered as a whole, and its different clauses and provisions examined and compared, so as to ascertain the general plan and purpose of the testator, if there be one." *Id.*

In ascertaining the testator's intention, a will is to be considered in the light of the conditions and circumstances existing at the time the will was made. *E.g., Cannon v. Cannon*, 225 N.C. 611, 617, 36 S.E. 2d 17, 20 (1945). We have emphasized that the court's responsibility is "to place itself as nearly as practicable in the position of the testator" at the time the will was executed. *E.g., In re Will of Johnson*, 233 N.C. 570, 575, 65 S.E. 2d 12, 15 (1951). In a sentence which has been frequently quoted, this Court has said: "The will must be construed, 'taking it by its four cor-

ners' and according to the intent of the testator as we conceive it to be upon the face thereof and according to the circumstances attendant." *Patterson v. McCormick,* 181 N.C. 311, 313, 107 S.E. 12 (1921). In referring to the "circumstances attendant" we mean "the relationships between the testator and the beneficiaries named in the will, and the condition, nature and extent of [the testator's] property." *Wachovia Bank and Trust Co. v. Wolfe,* 243 N.C. at 473, 91 S.E. 2d at 250. In short, the undertaking before us requires that we put ourselves "in the testator's arm chair." *Id.* at 474, 91 S.E. 2d at 250.

Applying the foregoing to the record before us, we conclude that Judge Fountain properly construed Mrs. Thomas' intention at the time she put her will in writing with respect to the disposition of her property at the time of her death. In reviewing this will from its four corners, we nowhere find any evidence, unlike the Court of Appeals, of any intention on Mrs. Thomas' part to create a trust fund "to insure that no beneficiary be forced to abandon an educational goal for financial reasons." *Pittman v. Thomas,* 58 N.C. App. at 339, 293 S.E. 2d at 698. Certainly, we find no words in the will before us to indicate an intent on Mrs. Thomas' part to overcome the general rule that mere precatory words will not create an express trust. *See Andrew v. Hughes,* 243 N.C. 616, 91 S.E. 2d 591 (1956). Had Mrs. Thomas intended to create a trust in item VII of her will, we believe that she would have done so in language as clear as that employed in items III, IV and V of her will, each of which created a trust for the benefit of one of her grandchildren including Carole Ann.[1]

---

1. Item III of Mrs. Thomas' will provided:

   I give and bequeath to my son, T. P. Thomas, Jr., Ten Thousand Dollars ($10,000.00) with the request the Executors of my estate pay such portion of this sum as may be needed for the education or medical expenses of his daughter, Catharine Lucile Thomas. Any sum not so used at the time of the closing of this estate to be invested by my son *for the use of* this daughter.

Record at 15 (emphasis added).

Item IV provided:

   I give and bequeath to my daughter Ten Thousand Dollars ($10,000.00) Mary Thomas Pittman *for the use of* her son, Walter James Pittman, Jr. It is intended that this sum be used solely for his education. Any money not so used should be given to him upon his 25th birthday.

Record at 15 (emphasis added).

We believe that the "circumstances attendant" to the writing of item VII of Mrs. Thomas' will were those indicating a concern with the particular circumstances she believed threatened the educational plans of Sarah Anne Thomas (Rowlett) and Dorris Elizabeth Thomas Taylor. Indeed, the trial court's seventh finding of fact, to which no exception was taken, buttresses this belief. That finding read:

> 7. Defendant, Catharine Lucile Thomas Gossom, is the youngest daughter of plaintiff, T. P. Thomas, Jr. Ms. Gossom has incurred large medical expenses during the course of her lifetime, including expenses during the years 1974-1976 in the approximate amount of $29,000.00. These medical expenses caused a significant strain on the financial resources of T. P. Thomas, Jr. and the existence of this hardship was known to the testatrix prior to and at the time she executed her will on October 1, 1976.

We believe the trial court properly identified in the quoted finding of fact the significant circumstance attendant to the writing of item VII of the will. As noted in our statement of facts above, Catharine Lucile Thomas Gossom, the youngest sister of Sarah Anne and Dorris Elizabeth, became ill in 1974 and was seriously ill for several years thereafter. The father of these girls, T. P. Thomas, Jr., incurred large medical expenses as a result and Mrs. Thomas was aware of this strain on her son's financial resources. By specifically naming Sarah Anne and Dorris Elizabeth first in item VII, Mrs. Thomas was, we think, responding to this particular circumstance attendant at the time and attempted to provide for their education.

We agree with the Court of Appeals that the evidence discloses a generous attitude on Mrs. Thomas' part with respect to the future education of all her grandchildren. As noted above,

---

Item V provided:

I give and bequeath to my son, James Miller Thomas, the sum of Ten Thousand Dollars *to be used for the education of* his daughter, Carole Ann Thomas, with the request that it be invested by him in a savings and loan account. Any money not so used may be given to her when she reaches her 25th birthday.

Record at 15 (emphasis added).

however, we are unable to glean from this will any intention to create a trust for that purpose. By adding the other names in item VII of her will, we think Mrs. Thomas intended that, *if at the time of her death*, the educational goals of any of those so named were in jeopardy because of financial circumstances similar to those Sarah Anne and Dorris Elizabeth faced, then funds would be made available from her estate to assist them as well. No such evidence of similar circumstances with respect to the other named beneficiaries were presented to Judge Fountain at the time of the hearing. Indeed, it would appear that such threatening financial circumstances do not exist with respect to the other beneficiaries. In the case of Carole Ann Thomas the will specifically provides for a $10,000 educational trust fund and an outright bequest of $1,000. Moreover, her father, James Miller Thomas, was the beneficiary treated most generously in Mrs. Thomas' will. We see no situation confronting Carole Ann even remotely similar to the one that faced the children of T. P. Thomas, Jr., at the time the will was written.

The "circumstances attendant" to the writing of item VII of Mrs. Thomas' will clearly indicate a desire to assist in the education of her grandchildren if at the time of her death the need to do so existed because the parents of those grandchildren were unable to shoulder the expense. The Court of Appeals correctly recognized that item VII was created on an "if and when needed" basis. It erred, however, in holding that Mrs. Thomas intended to establish a trust fund for her grandchildren for their educations in an unnamed amount and for an unnamed period of time.

For the reasons stated above, the decision of the Court of Appeals is reversed and this cause is remanded to that court with instructions that it remand to the Superior Court, Wilson County, for reinstatement of the order of the trial court.

Reversed and remanded.

Justices MEYER and MARTIN did not participate in the consideration or decision of this case.